WISCONSIN CHEMICAL CO. v. CHUTE.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919.)

No. 2629.

PATENTS ⬤328—INVENTION AND INFRINGEMENT.

The Chute patent, No. 824,906, for an improvement in the process of making wood alcohol, claims 1, 5, 6, and 10, held valid, not anticipated, and infringed.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by Harry O. Chute against the Wisconsin Chemical Company. From a decree for complainant, defendant appeals. Affirmed.

See, also, 185 Fed. 115.

Frank E. Liverance, of Grand Rapids, Mich., for appellant.

Louis Quarles, of Milwaukee, Wis., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Appellant attacks the decree entered against it, sustaining the Chute patent, No. 824,906, issued July 3, 1906, for an improvement in the process of making wood alcohol, relying on alleged invalidity and noninfringement of the patent. Ten claims appear in the patent, four of which are herewith set forth as more or less typical:

"1. The process of preparing wood alcohol from crude pyroligneous acid, which consists in distilling from said acid a concentrated distillate of between 10 and 25 per cent. alcoholic content and of acid nature, allowing said distillate to stand to permit separation of impurities, and decanting off the clear liquid."

"5. The process of preparing wood alcohol from crude pyroligneous acid, which consists in distilling from said acid a concentrated distillate of between 10 and 25 per cent. alcoholic content and of acid nature, allowing said distillate to stand to permit separation of impurities, decanting off the clear liquid, adding thereto an excess of alkali, decanting and refractionating the decanting liquid to produce perfectly miscible alcohol of above 80 per cent."

"6. The process of preparing wood alcohol from crude pyroligneous acid, which consists in distilling from said acid an acid product of an alcoholic strength wherein oily impurities are insoluble, allowing the same to stand to permit separation of such impurities, and decanting off the clear liquid."

"10. The process of preparing wood alcohol from crude pyroligneous acid, which consists in distilling from such acid an acid product of an alcoholic strength wherein oily impurities are insoluble, allowing the same to stand to permit separation of such impurities, decanting off the clear liquid, adding an excess of alkali, decanting away from the resinous deposit formed, and refractionating the decanted liquid to form a strong alcohol of above 80 per cent. and perfectly miscible with water."

Making alcohol from wood was old in 1906. The patent in suit, therefore, relates merely to an improvement in the process.

Generally speaking, wood alcohol is made from a pyroligneous acid (obtained by condensing the vapor or smoke from the burning wood to a liquid) by means with which we are not interested. Our indifference to the means whereby this pyroligneous acid is produced arises from the fact that the process by which wood alcohol is made, as described by Chute, as well as the processes commonly practiced before 1906, all require such a base.

This acid contains many ingredients, and it is by retaining some and eliminating others that manufacturers are enabled to produce a merchantable wood alcohol, an alcohol of at least 82 per cent. strength and miscible with water. Chute's problem was to reduce the cost of production. He claims to have accomplished the result by eliminating some of the steps previously taken.

By his first step he obtained a distillate with a greater alcoholic strength than was formerly sought. By his third step he used an "excess of lime" to (a) neutralize the acid and (b) remove the resinous ingredient. Chute describes this third step in his specification in the following language:

"Therefore, after decanting the alcohol from the separated oily bodies, I add an excess of an alkali, as lime. Reaction soon sets in, as is shown, by tne development of yellow color, the familiar color known and carefully avoided in working with pyroligneous acid as an evidence of overliming. It is here, however, advantageous and not detrimental. As the reaction progresses, alkali-resinous matters separate and form a precipitate. These resinous bodies formed by the action of the alkali on the aldehydic and ketonic impurities form a mass of novel and useful characteristics, it being substantialy a dye resin, being susceptible of use as a dyestuff, as it stains organic matters bright yellow when properly applied, and also of use as a resin. Being formed from a-liquid from which the oily and tarry impurities have been removed by previous treatments, it is substantially pure. I do not claim this material herein specifically, but reserve the right to file a separate application therefor. The spirit decanted from this precipitate will be found much improved in quality, having been freed from these two classes of impurities, and I am therefore enabled to directly rectify in any rectifying continuous column producing by this one redistillation alcohol of standard 82 per cent. strength, but of such purity that it is miscible with water in all proportions and cannot be refractionated into portions 'milking' with water."

One of the older processes in common use was to first free-treat the pyroligneous acid of tar (the alcoholic content then being about 5 per cent.), so that it might be thereafter neutralized with lime to make a merchantable acetate. By this method the producer was able to market, not only wood alcohol (subsequently obtained), but a by-product of wood alcohol. But repeated distillations were required before wood alcohol, miscible with water, was thus produced; and the fact that appellee by his process lost a valuable by-product is quite immaterial. The patent must be judged as an improvement in the art of making wood alcohol; the advance being in the lessened cost of production. Validity does not depend upon the question of whether the wood alcohol plus the value of the by-product is greater than the value of wood alcohol alone, or the value of wood alcohol plus the value of other and different by-products. The value of each product may and in fact does vary. The war created extraordinary demands for many articles not ordinarily in great demand. Wood alcohol during the war period rose in value, due to the increased demand.

But validity of this patent is also attacked because of the prior art as disclosed in an article written by a French chemist, Vincent. It is pointed out that Vincent, in his first distillation, using a multiple still, stopped "at the point where the methyl alcohol has all been distilled over." He also says, "A rich alcoholic liquid which abridges later operations is obtained." It is claimed this step is equivalent to the first step in claim 1, "which consists in distilling from the said acid a concentrated distillate of between 10 and 25 per cent. alcohol content and of acid nature."

But an examination of the evidence clearly satisfies us that there is a difference between the Vincent and the Chute process. Not only did Vincent's description of his primary distillate fail to set forth the specific statement of the per cent. of alcohol in the distillate, but it completely failed to provide for the elimination of oils from the acid distillate, and also failed to describe a process whereby wood alcohol of 82 per cent. strength was obtainable by two distillations from a pyroligneous acid base. Even if the first step were fully disclosed by Vin-

cent, anticipation would not appear. For invention is recognized in this process not because of any one step alone, but because "a particular step" is taken in connection with other particular steps. The use of "an excess of lime" is important only as a step taken with and after the first step that resulted in "a distillation of between 10 and 25 per cent. alcoholic content and of acid nature." Of course it is elementary that validity of a process patent containing several steps cannot be assailed by showing any one of the steps to be old. Even where all steps are old, anticipation is not established, unless it further appears that the steps (old individually) were employed in relation to one another as disclosed in the patent the validity of which is attacked. ·

Further attack is made upon the patent because of the use of the words "excess of lime"; it being contended that the expression is too indefinite and vague to warrant the court in attempting to apply it. While there might be force in the argument, if the words were given their literal meaning and nothing more, it must be apparent that we are not justified in so construing the words as used in these claims. Patentee, while speaking to the public, was addressing himself primarily to those educated in the art under consideration. He was dealing with chemistry and to those familiar with the manufacture of wood alcohol. Such a class would, we think, have no misunderstanding from the use of this term and experience no difficulty in following the directions given by Chute. If doubt otherwise existed, an examination of the specifications removes it. The purpose of "over-liming," as well as its manifestations, clearly appears in the description. It is comparatively easy for one skilled in the art to follow the directions.

As to other attacks on this patent, we think no separate discussion is necessary. We have considered them all, and agree with the District Court that the invalidity of the patent has not been established.

*Infringement.*—Little need be said on this phase of the case. The District Court found from all the evidence (appellant's stipulation as to how it made wood alcohol and the oral testimony of several witnesses) that infringement appeared. We think the record supports this finding, and we are not justified in disturbing it. While there is testimony tending to show noninfringement, it is disputed by other testimony fully as persuasive. For example, appellant denies "over-liming" in its process. Certain witnesses support this denial. They base their conclusions upon certain paper tests, which are disputed by tests made by Mr. Chute. But what was doubtless a controlling bit of testimony with the District Judge, as it is with us, is the statements of the witnesses respecting the color of the product after over-liming. The "excess of lime" required by the Chute process resulted in the development of a "yellow color." Certainly Chute had a right to define the terms he used in his public letter and we are not at liberty to ignore his definitions. Witnesses for appellant admitted that the color of its distillate after liming "was a light orange color." Certain exhibits were also received to show the color of the distillate which in our opinion indicated an "over-liming," or "an excess of lime," as Chute used that expression in his third step.

The decree is affirmed.